**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**WESTERN DIVISION**

**MOUNTAIN PURE, LLC, ANGELA SMITH,**
**GERALD MILLER, COURT STACKS,**
**KIMBERLY HARBESON, SCOTT MORGAN,**
**TRACY BUSH, QUINTON RILEY, KADEENA**
**DEPRIEST, WILLIAM MORRIS**                                          **PLAINTIFFS**

**v.**                                    **Case No. 4:13-cv-00119-KGB**

**CYNTHIA M. ROBERTS,**
**BOBBI SPRADLIN, AND JOHN DOES 1-20**                    **DEFENDANTS**

<u>**ORDER**</u>

On March 6, 2013, plaintiff Mountain Pure, LLC, and individual plaintiffs who are employees of Mountain Pure filed this action asserting Fourth Amendment claims under *Bivens v. Six Unknown Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), against named defendants Cynthia M. Roberts, a special agent with the Office of the Inspector General of the Small Business Administration, and Bobbi Spradlin, a special agent with the Internal Revenue Service (collectively, "named defendants"), as well as other agents named as John Does 1-20 (Dkt. No. 1). On December 20, 2013, plaintiffs filed an amended complaint (Dkt. No. 20). Plaintiffs allege that named defendants Ms. Roberts and Ms. Spradlin planned and executed a search of the Mountain Pure bottling plant that allegedly violated their constitutional rights under the Fourth Amendment. On January 24, 2014, named defendants filed a motion to dismiss (Dkt. No. 25), to which plaintiffs responded (Dkt. No. 27) and named defendants replied (Dkt. No. 31). For the reasons that follow, named defendants' motion to dismiss is denied.

**I.       Factual Background**

The following facts are taken from plaintiffs' amended complaint (Dkt. No. 20), unless otherwise cited, and accepted as true at the motion to dismiss stage. On January 18, 2012,

approximately 40 to 50 federal and state law enforcement agents searched the Mountain Pure bottling plant on Interstate 30 in Little Rock, Arkansas (*Id.* at 2, ¶ 4).  The agents conducted the search pursuant to search and seizure warrants issued by U.S. Magistrate Judge Beth Deere. These warrants authorized the search for and seizure of evidence of alleged economic crimes in connection with a Small Business Administration loan made to John Stacks, the principal owner of Mountain Pure (*Id.* ¶ 5).  Law enforcement had no reason to believe that Mr. Stacks or any employee of Mountain Pure was a drug dealer, gang member, violent criminal, or otherwise armed or dangerous (*Id.*).

Plaintiffs contend that law enforcement agencies "conducted a SWAT team raid" (*Id.* ¶ 6).  The agents approached the bottling plant in a long convoy with lights flashing.  They surrounded the plant and blocked all exits.  They were armed, some with their weapons drawn, and wore bullet proof vests (*Id.*).  Upon entering the plant, the agents secured the premises by forcing everyone present into one area and confiscating all cell phones (*Id.* ¶ 7).

During the search, some agents had their weapons drawn (*Id.*).  The agents searched the bottling plant for at least eight hours and perhaps longer (*Id.* at 3, ¶ 8).  They refused to allow anyone to leave for at least three hours after the building was secured, held some for up to eight hours, and prohibited all communication with anyone outside the building, including the owner and corporate counsel (*Id.*).

The agents, while detaining all employees, ordered some employees to submit to interrogation (*Id.* ¶ 9).  Although the employees, including the individual plaintiffs, were not free to leave, the agents did not inform the employees of their Miranda rights (*Id.*).  Some employees, including individual plaintiffs, requested assistance of counsel, but their requests were denied (*Id.*).

The agents seized thousands of documents during the search, many of which allegedly fell outside the scope of the warrants (*Id.* ¶ 10).  For example, some seized documents concerned operation of the machines at the bottling plant, and their seizure prevented Mountain Pure from ordering parts and supplies, resulting in lost profits (*Id.*).  Plaintiffs contend that no reasonable officer could believe that these items were within the scope of the items authorized to be seized by the warrant (*Id.*).  The agents also seized personal property of individual plaintiffs, such as college textbooks and iPods, which plaintiffs contend were irrelevant to the investigation and beyond the scope of the warrant (*Id.* at 3-4, ¶ 11).

Plaintiffs in their amended complaint allege in some detail what certain individual plaintiffs experienced during the raid, including but not limited to agents shoving plaintiff Scott Morgan against the wall and holding him there with a hand against his throat, denying plaintiff Gerald Miller the right to speak with company counsel and informing him that he could not leave until he submitted to interrogation, continuing to interrogate and detain plaintiff Tracy Bush despite requests for counsel and a refusal to answer questions without counsel, and pointing a loaded firearm at plaintiff Court Stacks's head (*Id.* at 5-7, ¶¶ 17-22).  Plaintiffs claim, in part, that the search was unnecessary as the agents could have secured the documents or other items seized with a subpoena (*Id.* at 4, ¶ 13).  Plaintiffs also claim that "[t]he only discernible reason for a SWAT type raid was publicity, and that objective was achieved.  The raid was publicized on both television and in the newspapers" (*Id.*).

Plaintiffs allege in their complaint that the named defendants planned and executed the search.  They contend the named defendants determined the search's scope and directed the actions of agents under their control, such as the refusal to release individual plaintiffs until they

submitted to interrogation.  They also maintain that the named defendants participated in the challenged conduct during the search.

## II.     Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555 (alteration in original) (citations omitted).  "When ruling on a motion to dismiss, the district court must accept the allegations contained in the complaint as true and all reasonable inferences from the complaint must be drawn in favor of the nonmoving party."  *Young v. City of St. Charles*, 244 F.3d 623, 627 (8th Cir. 2001).

A government official sued in his individual capacity may raise the affirmative defense of qualified immunity.  Qualified immunity "will be upheld on a 12(b)(6) motion only when the immunity is established on the face of the complaint."  *Weaver v. Clarke*, 45 F.3d 1253, 1255 (8th Cir. 1995).  The doctrine of qualified immunity "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Stepnes v. Ritschel*, 663 F.3d 952, 960 (8th Cir. 2011) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)) (internal

quotation marks omitted).  To determine if qualified immunity applies, the Court must conduct a two-prong inquiry by examining: "(1) whether the facts that a plaintiff has alleged . . . make out a violation of a constitutional right and (2) whether the constitutional right violated was clearly established at the time of defendant's alleged misconduct."  *Id.* (alteration in original) (internal quotation marks omitted).  "Unless the answer to both of these questions is yes, the defendants are entitled to qualified immunity." *Krout v. Goemmer*, 583 F.3d 557, 564 (8th Cir. 2009).  The Supreme Court has held that the qualified immunity analysis in a *Bivens* action is identical to that in a 42 U.S.C. § 1983 lawsuit. *See, e.g.*, *Wilson v. Layne*, 526 U.S. 603, 609 (1999).

To conclude that the right that the government official allegedly violated is "clearly established," "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).  Though a case directly on point is not required, "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2083 (2011).  Courts should not "define clearly established law at a high level of generality." *Id.* at 2084.  The Eighth Circuit "applies a flexible standard, requiring some, but not precise factual correspondence with precedent, and demanding that officials apply generally, well-developed legal principles." *Coates v. Powell*, 639 F.3d 471, 477 (8th Cir. 2011) (quoting *J.H.H. v. O'Hara*, 878 F.2d 240, 243 (8th Cir. 1989)); *see Mettler v. Whitledge*, 165 F.3d 1197, 1202-03 (8th Cir. 1999) ("[T]his generalized right to be free from an unreasonable use of excessive force during a police seizure does not clearly establish a right for purposes of a qualified-immunity analysis.  Rather, [plaintiff] must show the right was clearly established in a particularized sense relevant to the case at hand." (citations omitted)).  "Although earlier cases need not involve fundamentally or materially similar facts, the earlier cases must give officials 'fair warning that

their alleged treatment of [the plaintiff] was unconstitutional.'" *Meloy v. Bachmeier*, 302 F.3d 845, 849 (2002) (alteration in original) (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)). Moreover, the Eighth Circuit has held that, "[i]n the absence of binding precedent, a court should look to all available decisional law, including decision of state courts, other circuits and district courts." *Buckley v. Rogerson*, 133 F.3d 1125, 1129 (8th Cir. 1998) (quoting *Norfleet v. Ark. Dep't of Human Servs.*, 989 F.2d 289, 291 (8th Cir. 1993)).

### III.   Unconstitutional Search Claim

Because the Fourth Amendment protects citizens against only unreasonable searches, officers do not violate the Fourth Amendment when they execute a valid warrant in a reasonable manner. *See L.A. Cnty. v. Rettele*, 550 U.S. 609, 612 (2007). "[T]he manner in which a warrant is executed is subject to later judicial review as to its reasonableness." *Dalia v. United States*, 441 U.S. 238, 258 (1979); *Hummel-Jones v. Strope*, 25 F.3d 647, 650 (8th Cir. 1994) ("The manner in which a warrant is executed is always subject to judicial review to ensure that it does not traverse the general Fourth Amendment proscription against unreasonableness."). To determine whether a particular search or seizure was conducted in a reasonable manner, courts must examine "whether the totality of the circumstances justified a particular sort of search and seizure," including when it was made and how it was carried out. *See Tennessee v. Garner*, 471 U.S. 1, 8-9 (1985). In excessive use of force cases, "the level of force used must be justified in light of 'the severity of the crime at issue,' the suspect's flight risk, and the immediacy of the risk posed by the suspect to the safety of officers and others." *Shekleton v. Eichenberger*, 677 F.3d 361, 367 (8th Cir. 2012) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)).

Here, plaintiffs allege that named defendants planned, authorized, and directed a search of Mountain Pure's bottling plant for evidence of purely economic crimes but with the purpose

of publicity.  The search allegedly involved 40 to 50 agents approaching in a long convoy with lights flashing and wearing bullet proof vests and firearms, some drawn, to conduct a SWAT team raid, despite named defendants having no knowledge that anyone on the premises was armed or dangerous or would otherwise pose a risk to the agents conducting the search.  Named defendants argue that plaintiffs' allegation of a "SWAT-type raid" is based on labels and conclusions, but the Court determines that the specific facts alleged and the case law below justify a reasonable inference that a SWAT-type raid occurred.

Courts have held or suggested that use of a SWAT-type team not justified by the totality of the circumstances is a violation of the Fourth Amendment.  *See, e.g.*, *Estate of Smith v. Marasco*, 430 F.3d 140, 149 (3d Cir. 2005) ("[The] decision to employ a SWAT-type team can constitute excessive force if it is not 'objectively reasonable' to do so in light of the totality of the circumstances.'" (citations omitted)); *Holland ex rel. Overdorff v. Harrington*, 268 F.3d 1179, 1190 (10th Cir. 2001) ("[T]he decision to deploy a SWAT team to execute a warrant must be 'reasonable' because it largely determines how the seizure is carried out, thereby determining the extent of the intrusion on the individual's Fourth Amendment interests."); *Alexander v. City & Cnty. of San Francisco*, 29 F.3d 1355, 1367 (9th Cir. 1994) ("The force which was applied must be balanced against the *need* for that force. . . .  If the jury were to find that the officers entered in order to help the inspectors inspect—as defendants contend on appeal—then the jury may also conclude that the force used (deployment of a SWAT team) was excessive in relation to the purpose for which it was used (ensuring the immediate execution of a forcible entry inspection warrant)." (first alteration in original)); *Rush v. City of Mansfield*, 771 F. Supp. 2d 827, 858-59 (N.D. Ohio 2011) (compiling cases); *see also Mlodzinski v. Lewis*, 731 F. Supp. 2d 157, 167 (D.N.H. 2010) ("[T]he court . . . must register its concern over the use of the [SWAT-type] team

to execute the warrants against Rothman by sending as many as ten officers, dressed in military fatigues and armed with assault rifles, into his family's apartment after breaking down the door with a battering ram at 4 a.m."), *aff'd in part and rev'd in part on other grounds*, 648 F.3d 24 (1st Cir. 2011); *Conradt v. NBC Universal Inc.*, 536 F. Supp. 2d 380, 383 (S.D.N.Y. 2008) ("[A] reasonable jury could find that there was no legitimate law enforcement need for a heavily armed SWAT team to extract a 56-year old prosecutor from his home when he was not accused of any actual violence and was not believed to have a gun, and that this was done solely 'to sensationalize and enhance the entertainment value' of the arrest.").  Based on the totality of the circumstances as pleaded in the complaint and the case law above, the Court determines that plaintiffs have alleged facts sufficient to state an unconstitutional search claim.

Even so, named defendants are entitled to qualified immunity if plaintiffs' allegedly violated constitutional rights were not clearly established at the time.  Generally, "[i]t is elementary Fourth Amendment law that even valid warrants must be executed in a reasonable manner," *Hummel-Jones*, 25 F.3d at 653, and the right to be free from excessive force was clearly established at the time of the search, *Shekleton*, 677 F.3d at 367 (stating that "the right to be free from excessive force dates back to the adoption of the Bill of Rights of our Constitution").  More specifically, based on the case law of other circuits, the Court determines that it was clearly established at the time of the search that the decision to deploy a SWAT-type team to execute a search warrant must be reasonable under the Fourth Amendment.  *See Estate of Smith*, 430 F.3d at 149; *Holland*, 268 F.3d at 1190; *Alexander*, 29 F.3d at 1367.  It also was clearly established in the Eighth Circuit at the time that, to be reasonable, "the level of force must be justified in light of 'the severity of the crime at issue,' the suspect's flight risk, and the immediacy of the risk posed by the suspect to the safety of officers and others." *Shekleton*, 677

F.3d at 367 (quoting *Graham*, 490 U.S. at 396).  Based on the totality of the circumstances as pleaded in the complaint, the Court determines that named defendants had "fair warning" that deciding to deploy a SWAT-type team and permitting the conduct alleged under the circumstances pleaded here may have been unreasonable.  *See id.* (finding that, although the Eighth Circuit had not yet determined whether an officer's use of a taser on a nonviolent, nonfleeing misdemeanant was an excessive use of force, "the general constitutional principles against excessive use of force that were clearly established at the time of the incident . . . were such as to put a reasonable officer on notice that tasering [plaintiff] under the circumstances as presented by [plaintiff] was excessive force in violation of clearly established law").

IV.     **Unconstitutional Seizure Of Property Claims**

"A seizure of property under the Fourth Amendment occurs when there is 'some meaningful interference with an individual's possessory interests in that property.'"  *Burlison v. Springfield Pub. Sch.*, 708 F.3d 1034, 1039 (8th Cir. 2013) (quoting *Dixon v. Lowery*, 302 F.3d 857, 862 (8th Cir. 2002)).  Not all government interferences are seizures:  "the seizure standard prohibits the government's conversion of an individual's private property, as opposed to the mere technical trespass to an individual's private property."  *United States v. Va Lerie*, 424 F.3d 694, 702 (8th Cir. 2005).  When a seizure of property occurs, however, the Fourth Amendment demands that it be reasonable, and reasonableness depends on the context of the seizure. *Burlison*, 708 F.3d at 1039 (citing *New Jersey v. T.L.O.*, 469 U.S. 325, 337 (1985)).

A.     **Mountain Pure's Property**

Mountain Pure alleges that defendants intentionally seized property outside the scope of the warrants and that no reasonable officer could believe that the items seized were within the scope of the warrants.  The warrants authorized the search for and seizure of, among other

things, "any and all business records"; "any and all purchasing records," including asset lists; and certain computers or electronic media, including documentation and manuals necessary to access them, of Mountain Pure (Dkt. Nos. 12-1, 12-2).  Mountain Pure alleges that the agents seized "Pasteurizer drawings, electrical and plumbing schematics, operating manuals for machinery, bottle palletizer input/output listing and notes, 2.5 gallon palletizer PLC program printouts, and other notes and schematics" (Dkt. No. 27, at 6).  While the warrantless seizure of property is not in itself a Fourth Amendment violation when the mistake in seizing the property is reasonable, *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 537 (8th Cir. 1999); *Audio Odyssey, Ltd. v. Brenton First Nat'l Bank*, 245 F.3d 721, 737 (8th Cir. 2001), Mountain Pure has alleged facts sufficient to state a claim that defendants' alleged mistake in seizing these items was unreasonable.  Moreover, "the Fourth Amendment's protection against seizure of one's property in the absence of a warrant, an equivalent court order, or circumstances justifying a recognized exception to the warrant requirement" is clearly established, *Audio Odyssey, Ltd.*, 245 F.3d at 737, so qualified immunity does not shield defendants unless they reasonably believed that the seized items were within the scope of the warrant.  From the face of the amended complaint, based on plaintiffs' allegations, this Court cannot conclude that was the case.

### B.    Individual Plaintiffs' Property

Individual plaintiffs allege that defendants confiscated their cell phones and other items of personal property, "such as college textbooks and iPods" (Dkt. No. 20, at 3-4, ¶ 11).  While they do not allege how long they were deprived of these items or whether the items were returned after the search, the facts alleged allow the Court to infer reasonably and in plaintiffs' favor a meaningful interference constituting a seizure.  Further, the Court may reasonably infer that the items are not within the scope of the warrants and that any alleged mistake in

thinking so was unreasonable.   For these reasons and the reasons stated above, individual plaintiffs have alleged facts sufficient to state a clearly established unconstitutional seizure of personal property claim.

### V.      Unconstitutional Detention Claim

Agents executing a search warrant may "detain the occupants of the premises while a proper search is conducted."   *Muehler v. Mena*, 544 U.S. 93, 98 (2005) (citation omitted). However, where the questioning of an individual prolongs his or her detention, an additional seizure has occurred within the meaning of the Fourth Amendment that requires reasonable suspicion.   *See id.* at 101; *see also Arizona v. Jones*, 555 U.S. 323, 333 (2009) (holding that an officer's inquiries into matters unrelated to the justification for a traffic stop converts the stop into an unlawful seizure if it measurably extends the stop's duration); *United States v. Olivera-Mendez*, 484 F.3d 505, 510 (8th Cir. 2007) (determining that, "[w]here the initial detention was not prolonged by questioning on unrelated matters, 'there was no additional seizure within the meaning of the Fourth Amendment.'" (quoting *Muehler*, 544 U.S. at 101)).   In explaining this rule, the Supreme Court has noted that "a lawful seizure 'can become unlawful if it prolonged beyond the time reasonably required to complete that mission.'"   *Muehler*, 544 U.S. at 101 (quoting *Illinois v. Caballes*, 543 U.S. 405, 407 (2005)).   This law was clearly established at the time of the search here.

The amended complaint alleges that defendants prohibited individual plaintiffs from leaving before they were interrogated but released at least some other occupants much sooner than individual plaintiffs.   The individual plaintiffs claim that these allegations imply that defendants would have released them earlier but for an insistence that they submit to interrogation.   In other words, individual plaintiffs claim that their interrogations prolonged their

detention.  Named defendants respond that questioning the individual plaintiffs did not prolong their detention, as the agents legally could have detained them for the entire search.  Even so, based on the record before the Court, and because the agents did not detain all the occupants for the entire search, the Court must make the reasonable inference that the agents would have released individual plaintiffs earlier but for their interrogations and that the interrogations prolonged individual plaintiffs' detention beyond the time reasonably required to complete the mission of securing the search area.  *Young*, 244 F.3d at 627.

The complaint also alleges that defendant John Doe IV, an unknown agent, pointed a loaded gun at individual plaintiff Court Stacks's head when detaining him.  Pointing guns at persons who are compliant and present no danger is a constitutional violation that appears to be clearly established.  *See Baird v. Renbarger*, 576 F.3d 340, 346-47 (7th Cir. 2009).  However, "a supervising officer can be liable for an inferior officer's constitutional violation only if he directly participated in the constitutional violation, or if his failure to train or supervise the offending actor caused the deprivation."  *Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010) (quoting *Otey v. Marshall*, 121 F.3d 1150, 1155 (8th Cir. 1997)) (internal quotation marks omitted).  Ordering actions that constitute a constitutional violation qualifies as direct participation.  *See Otey*, 121 F.3d at 1155 (finding that supervisor was not liable because there was no evidence that he ordered or "otherwise directly participated in" the alleged violation of plaintiff's constitutional rights).

Plaintiffs do not allege a failure to supervise claim against named defendants.  Plaintiffs allege that named defendants "directed the actions of agents under their control and directed those agents to act in a manner which violated plaintiffs' constitutional rights" (Dkt. No. 20, at 1, ¶ 2) and then allege with specificity the constitutional violations committed by unknown

defendants, including those by John Doe IV.  Based on these allegations, plaintiffs have stated a facially plausible excessive force claim against the named defendants.  *See Hummel-Jones*, 25 F.3d at 653 n.10 (finding that an individual may be liable for alleged Fourth Amendment violations in which she allegedly did not participate because she "unarguably participated in the raid itself" and "there are material questions of fact as to who participated in, ordered, or condoned the other particular acts of which [plaintiffs] complain[]").

* * *

For these reasons, the Court denies named defendants' motion to dismiss.

SO ORDERED this the 13th day of June, 2014.

Kristine G. Baker
United States District Judge